UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DENNIS BUSH<br><br>Plaintiff,<br><br>v.<br><br>I. C. SYSTEM, INC.<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER PROTECTION ACT, THE MICHIGAN OCCUPATIONAL CODE AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Dennis Bush, is a natural person who resided in Detroit, Michigan, at all times relevant to this action.

2. Defendant, I. C. System, Inc. ("I. C. System" or "Defendant"), is a Minnesota Corporation that maintained its principal place of business in St. Paul, Minnesota, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Dennis's claims under the Michigan Occupational Code ("MOC"), Mich. Comp. Laws § 339.901, et seq., because those claims share a common nucleus of operative facts with Dennis's claims under the FDCPA. S*ee Litt v. Midland Credit Management, Inc.*, 2014 U.S. Dist. LEXIS 66658 (E.D. Mich. May 15, 2014)(in FDCPA case, supplemental jurisdiction exercised over claims under MOC).

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. Before I. C. System began contacting Dennis, it and Dennis had no prior business relationship and Dennis had never provided express consent to I. C. System to be contacted on his cellular telephone.

7. I. C. System regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. The principal source of I. C. System's revenue is debt collection.

9. I. C. System is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10. As described, *infra*, I. C. System contacted Dennis to collect a debt that was incurred primarily for personal, family, or household purposes.

11. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12. Dennis is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13. Around the Spring of 2016, I. C. System began calling Dennis on his cellular phone ending in -2199 for the purpose of collecting a debt allegedly owed by someone other than Dennis.

14. Shortly after the calls began, Dennis advised I. C. System that he was not the person with whom I. C. System was looking to speak.

15. In addition, Dennis communicated his desire that I. C. System cease calling him.

16. Notwithstanding this communication, I. C. System continued to call Dennis on his cellular phone ending in -2199 for the purpose of collecting a debt allegedly owed by someone other than Dennis.

17. On multiple occasions, Dennis advised I. C. System that he was not the person with whom I. C. System was looking to speak and communicated his desire that I. C. System cease calling him.

18. Nevertheless, ICS continued to call Dennis on his cell phone ending in -2199.

19. I. C. System's policies and procedures for processing account data received from original creditors fail to identify easily discoverable errors and avoid the needless harassment of undeserving consumers like Dennis.

20. I. C. System unreasonably relied upon inaccurate information provided to I. C. System by one (1) or more original creditors for whom I. C. System was attempting to collect a debt when I. C. System called Dennis's cellular telephone.

21. I. C. System's policies and procedures violate the FDCPA.

22. I. C. System's collection efforts, including but not limited to its telephone calls, caused Dennis emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

23. I. C. System's collection efforts also intruded upon Dennis's privacy.

24. In addition, each time I. C. System placed a telephone call to Dennis, I. C. System occupied Dennis's telephone number such that Dennis was unable to receive other phone calls at that telephone number while I. C. System was calling him.

25. I. C. System's telephone calls also forced Dennis to lose time by having to tend to I. C. System's unwanted calls.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

26. Dennis re-alleges and incorporates by reference Paragraphs 6 through 25 above as if fully set forth herein.

27. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

28. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

29. The likely effect of I. C. System's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Dennis.

30. I. C. System violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Dennis in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

31. Dennis re-alleges and incorporates by reference Paragraphs 6 through 25 above as if fully set forth herein.

32. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA.  *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee.  If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

33. I. C. System's policies and procedures, as described in Paragraphs 19 through 21, *supra*, constitute "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

34. I. C. System's practice, therefore, violates Section 1692d of the FDCPA, which provides:

    A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

    *See* 15 U.S.C. §1692d.

35. Because I. C. System's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

36. I. C. System violated 15 U.S.C. § 1692d(5) by causing Dennis's telephone to ring or engaging Dennis in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass Dennis.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

37. Dennis re-alleges and incorporates by reference Paragraphs 6 through 25 above as if fully set forth herein.

38. I. C. System violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FOUR

### Violation of the Telephone Consumer Protection Act

39. Dennis re-alleges and incorporates by reference Paragraphs 6 through 25 above as if fully set forth herein.

40. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

    Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

    137 Cong. Rec. 30,821 (1991).

41. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

42. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls.  The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 13, ¶ 13; *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

43. A predictive dialer is an ATDS within the meaning of the TCPA. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 13, ¶ 13; *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

44. I. C. System used a predictive dialer to place calls to Dennis's cellular phone number ending in -2199.

45. The TCPA provides, in part:

    (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—

    (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

    (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

    * * *

    (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or

> any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

46. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, pp 40-41, ¶¶ 72-73.

47. Any consent that may have been previously given as to a called telephone number lapses when that number is reassigned. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012); *Sterling v. Mercantile Adjustment Bureau, LLC*, 2013 U.S. Dist. LEXIS 186432, *6-7 (W.D.N.Y. Nov. 22, 2013).

48. A caller that places calls to a reassigned telephone number without the express consent of the called party is deemed to have "constructive knowledge" of the reassignment after one phone call has been placed to that reassigned number. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 40, ¶ 72.

49. Dennis was the "called party" in each telephone call I. C. System placed to a Dennis's cellular telephone.

50. I. C. System violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Dennis on his cellular telephone without Dennis's prior express consent or after such consent had been revoked.

51. In addition, The TCPA provides, in part:

    > If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

    47 U.S.C. § 227(b)(3).

52. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

53. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc*. 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013); *Steward v. Regent*

*Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011).

54. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 U.S. Dist. LEXIS, at *21-22; see also *Roylance*, 2015 U.S. Dist. LEXIS, at *31 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

55. I. C. System voluntarily placed telephone calls to Dennis's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

56. In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called. *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla 2012); *aff'd* 755 F.3d 1265 (11th Cir. 2014).

57. I. C. System failed to adequately place intermittent live verification calls to Dennis's cellular telephone number to ensure that Dennis had provided his express consent to I. C. System to call those telephone numbers.

58. I. C. System's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## COUNT FIVE

### Violations of the Michigan Occupational Code

59. Dennis re-alleges and incorporates by reference Paragraphs 6 through 25 above as if fully set forth herein.

60. I. C. System is a "collection agency" as that term is defined in the MOC, Mich. Comp. Laws § 339.901(b).

61. Dennis is a "consumer" as defined by the MOC and is a person whom the act was intended to protect, Mich. Comp. Laws § 339.901(f).

62. I. C. System attempted to collect a "debt" within the meaning of Mich. Comp. Laws § 339.901(a).

63. I. C. System willingly and knowingly violated Mich. Comp. Laws § 339.915(n) by using harassing, oppressive, or abusive methods to collect a debt.

64. I. C. System willingly and knowingly violated Mich. Comp. Laws § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

65. I. C. System's willful violations of the MOC entitle Dennis to a civil penalty of not less than three (3) times the actual damages he sustained as a result of I. C. System's violations of the MOC.

## JURY DEMAND

66. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

67. Plaintiff prays for the following relief:

   a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

   b. An order enjoining Defendant from placing further telephone calls to Plaintiff's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

   c. Judgment against Defendant for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Defendant made in violation of the TCPA.

   d. Judgment against Defendant for actual damages, statutory damages, costs and reasonable attorney's fees, plus a civil penalty of not less than three (3) times Plaintiff's actual damages, pursuant to Mich. Comp. Laws § 339.916.

   e. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: October 5, 2016          By:   /s/ David M. Menditto
                                     *One of Plaintiff's Attorneys*

                               David M. Menditto, Esq.
                               Hyslip & Taylor, LLC LPA
                               Illinois Bar No. 6216541
                               1100 W. Cermak Rd., Suite B410
                               Chicago, IL  60608
                               (P) 312-380-6110
                               (F) 312-361-3509
                               (E) davidm@fairdebt411.com